Good morning, Your Honors, and may it please the Court, I'm Josh Katz from Kent, Beatty & Gordon for the appellant, Broadspring, Inc. We've raised five issues on appeal. The first one is attorneys' fees as damages, and the other four are relating to the District Court's awards of costs. I must say I'm rather puzzled by the lawyers' fees as damages inasmuch as my understanding is the great divide between English defamation law and American defamation law is just that, that under American law, maybe you can find a case otherwise, but under American law, you pay your own, except in some kind of sanctions, you pay your own legal fees. If you lose in England, the loser pays for all, and that's the principal reason why English defamation law is considered so much more drastic. That's why lots of American plaintiffs fly across to London in order to bring their suits, precisely because they can't get their legal fees if they bring them here. Is that generally right? Your Honor, my understanding is that I think English is considered more favorable to the plaintiff because it's easier to prove liability, not because of the American law. Whereas my understanding was, if there's one principal, after all, we're dealing with 50 different—it's common law—we're dealing with 50 different, maybe statutory law, but 50 different laws, sets of laws, and it's virtually unanimous that there's no fee shift. And you're saying there is, in effect, aren't you? You're saying in this case there is. I wouldn't equate it with fee shifting, but I think the rule is that to the extent you have attorney's fees, there were actually damages from the tort. And that's true for, I think, any type of tort under California law and the law of the other 49 states. There's no appellate case law directly on point in California. We do cite a Nevada Supreme Court case which held that attorney's fees are damages, and we cited a number of district court decisions, including a decision by Judge Fresca in the Metropolitan Opera case, which sort of does a survey of the law, including New York—focusing on New York, but including other states—that says when you have to bring a suit in order to discover the identity of the person who's defaming you and try to stop the defamation, those are essentially mitigation damages, and those are recoverable as damages. To the extent you're just suing to recover damages for a defamation that already occurred, I would say those are fees as fees and not fees as damages, and they wouldn't be recovered. So are you looking, then, for the initial legal fees with respect to the initial investigation you had to do in order to fill out your complaint but not as to trial? I think our case is easiest with respect to the initial investigation, but I think ultimately it's a question of fact for the jury. And, in fact, what the cases in California say is that in situations where fees are recoverable as damages, it's the defendant's burden to try to apportion them. In other words, to say these are not fees as damages, these are just fees you spend litigating. So ultimately it's a decision for the jury. I think we have a very good case with respect to— Okay, but all the fees you're talking about are fees with respect to the statements that were subject to this lawsuit and involved what eventually was this lawsuit. Right, and I think it's important to remember the statements actually continued during the lawsuit. So essentially our efforts to obtain discovery, which was litigated extensively, and Judge Furman wrote lengthy opinions or detailing everything we had to do just to find the statements that the jury ultimately found to be defamatory. It wasn't solely pre-lawsuit. Most of it was during the lawsuit. And, in fact, even after we filed suit, they continued to deny that they had anything to do with the squidulette. And so that's at A661, there was a declaration by Mr. Nash that filed at the beginning of the case that Congo had nothing to do with this. And then eventually, you know, they had to come clean. I think whether, certainly if that was done in bad faith, for example, I can see where there might be, I don't know, there might very well be fees as a sanction for the way it was litigated, but not fees. I'm much more dubious about fees simply because that's what it, that's the lawyering it took to ultimately get the defamation judgment. I think the fact that it happened in a litigation as opposed to hiring a private investigator outside litigation can't be dispositive. There's no principle basis to distinguish between the two. If you have to incur an expense in order to unmask an anonymous defamer, it shouldn't matter if the expense is paid to a lawyer or paid to a private investigator or paid to an IT firm. The point is it's an expense. And in fact, if we just focus on the language of the statute, it says, such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel. It doesn't say except for attorney's fees. There's no carve-out. It's worded broadly. And I just don't see any principle way to distinguish between paying a lawyer to do something versus paying any other sort of service provider. Hasn't the rule of California law that you're asking us to embrace with respect to attorney's fees been limited to insurance bad faith cases? No, it has not, Your Honor. Well, why am I reading from a Supreme, a California Supreme Court case that says in Brandt, this court established a notable exception to the American rule for insurance bad faith cases?  Kasim. Kasim. Kasim. Oh, Kasim, that I have in my news. And why is it that there are all these California appellate court cases that seem to, well, in fact, not just suggest, but say that the rule that you're asking us to embrace is limited to the facts of Brandt? Those cases, I don't think they say it's limited to the facts of Brandt. They say Brandt shouldn't be read as allowing you to recover fees as fees any time you have to bring a suit. You know, there's, I certainly, they have some intermediate appellate cases with good language for them. Would you like us to certify to the California Supreme Court? If Your Honor's thought that was appropriate, I certainly wouldn't object. Obviously, my preference would be to win, but I certainly would rather. Notwithstanding all these data points that seem to undermine the position that you're asking us to adopt. Well, Your Honor, we have a lot of data points in our favor, too. We have Sumner Hill, which is a California appellate court case, which says Brandt is not simply about, you know, let's impose some sort of punitive rule on insurers. It's a matter of general tort law. And, in fact, Sumner Hill is a slander of title case, which says you can get fees whenever those fees are approximately caused as damages. There's the Oakley decision, which is a California district court case. There's a number of cases involving malicious prosecution or false imprisonment where you get fees as damages. So, certainly, I acknowledge there's some good language for them, but we have good language, too. And I don't think there's anything that is actually controlling from the California Supreme Court. But before you sit down, let me just ask you about one thing, the costs, the expert deposition costs. Am I right, just as a matter of fact, that what happened was that the expert, Dr. Magnum, was paid by your client for appearing at the deposition and preparing for the deposition. And what you're seeking is reimbursement of your costs, your reimbursement costs. Right. It's just his bill. It's not what we spent defending the deposition. But he's been paid, and it's really your asking to be paid for paying him. Right. I think that's exactly what Rule 26 contemplates. The person who takes the expert deposition has to pay the expert's costs. And if we advanced it, we didn't tell him to send your— Well, the expert's fees, it says. Correct. So this is all we're seeking is his fees, which I think is just a straightforward application of Rule 26. Good morning. May it please the Court. I'm Norman Simon with Kramer Levin of Taliesin-Frankel for the defendant's appellants. Special damages is a defined term under the applicable California statute here, Section 48A, and it requires a showing of actual economic damage suffered as a result— I thought you said it was defendant's appellants. I did, Your Honor. Appellees. I misspoke, Your Honor. Defendant's appellees. Sorry, Your Honor. Thank you for the correction. Showing actual economic damage suffered as a result of the alleged defamatory statement. Allowing attorneys' fees to constitute special damages in defamation actions essentially would automatically satisfy the special damages definition, rendering the requirement meaningless, and essentially, as Judge Sack observed, turning the American rule into the English rule in defamation cases. While professing not to seek attorneys' fees qua attorneys' fees, that is precisely what Broadspring does here. And Broadspring, in its brief, places heavy reliance on the Brandt case, which the Kassim court characterized as only in limited circumstances, providing that an insured may recover as an element of damages the attorney's fees incurred in litigating, importantly, the breach of contract issue up to the value of the policy, but not fees attributable to bringing the bad faith tort action against the insurer itself. Defense costs in connection with the breach of contract issue. Correct, Your Honor. And numerous courts, as Your Honor— Which makes sense. I respectfully agree, Your Honor. And numerous courts have flatly rejected the broad application that's been pursued by Broadspring here, and they're cited in our brief at pages 28 to 34. Under the logic that's pursued here by Broadspring, attorneys' fees would be recoverable as damages in every defamation case because every tort approximately causes the litigation that follows it. And that simply is not supported by Brandt or any other California case. Rather, we submit that the exclusion of attorneys' fees from defamation special damages is supported by the California Supreme Court's holding in Martin v. Zetto, decided in 2004. In that case, the Court, the California Supreme Court, confirms the unavailability of attorneys' fees in defamation actions generally. In that case, after securing dismissal of a slander suit, the defendants sought recovery of fees pursuant to a California Civil Code provision, Section 1021.7, which allowed a discretionary award of attorneys' fees in actions against police officers, but it included on its face broader language that seemingly allowed recovery of attorneys' fees in libel and slanderous actions generally. In affirming the trial court's denial of such fees, the Supreme Court of California held that this unique statute did not authorize an award of attorneys' fees to all parties in defamation actions because, quote, that would create a significant and heretofore unrecognized exception to the general rule that all parties to litigation must pay their own attorneys' fees. And the California Supreme Court went on to observe that the legislature may adopt exceptions to this general rule. And the Court even observed that the rule that plaintiff proposes would presumably serve the hypothetical policy goal of deterring unmeritorious lawsuits for libel and slander. Nevertheless, the California Supreme Court squarely held that nothing in the legislative history suggested a broader intent to make attorneys' fees available for libel and slander actions generally. And here the district court correctly noted that although Martin was decided in a factually different context, that case is indicative of California's general policy in favor of each party paying its own litigation expenses. Now, Broadspring also relied, as Mr. Katz noted this morning, on Sumner Hill Homeowners Association, which is a case from the California Appellate Courts decided in 2012. Sumner Hill. Roberts. So as I understand it, your argument, just to shortcut it with respect to Sumner Hill, is that that relates to a particular requirement having to do with clear title and property. Yes, Your Honor. Slander of title, yes. And the analytical distinction there, Your Honor, is litigation is necessary to clear title. Here, while Broadspring opted to bring litigation, as was its right, it was not necessary for any legal status or to clear title for properties. So attorneys' fees are necessarily going to flow from litigation in connection with clearing title. Correct, Your Honor. Under California law. Correct, Your Honor. And it's sort of analogous. As the Sumner Hill court pointed out, it's analogous to a situation where there is a threat of malicious prosecution, where someone is forced to defend themselves. If I recall correctly, the court in Sumner Hill said, not unlike what happened in Kassim, that it was limited to the facts of that case. Yes, Your Honor. It expressly did hold that. And precisely because their title was involved. Let me ask you about costs. Yes, Your Honor. And in particular, the expert cost, because I'm having a little trouble understanding, given the clear language of Rule 26, why an expert who is deposed isn't just entitled in the absence of manifest injustice to fees, or why the party that puts up or provides the expert isn't entitled to reimbursement for those fees. Your Honor, I think the district court here reasoned that the sole testimony that was proffered by Dr. Mangum in this case pertained to the Lanham Act claim that was rejected. So can you tell me where in the language of Rule 26 it says this is conditioned on Rule 54? Your Honor, it's not in the plain language of the statute, of the rule. Is it anywhere in the plain language? It is not, Your Honor. And in fact, we have found no authority that speaks to the question. And the most I can say to you — Would you agree that that might be error? I would concede, Your Honor, that that may be error. What I would say, Your Honor, is the manifest unjustness element speaks to at least some element of discretion imputed into the rule. But the district court didn't make that finding. Correct, Your Honor. How much are we talking about? We're talking minimal amounts, $4,357.50. Minimal amount, okay. Well, Your Honor, relatively speaking, relative to the $1.8 million in attorneys' fees. Got it. Would Your Honor like — any of Your Honors like me to address the other cost issues? Sure. As you — you've got 3 minutes and 31 seconds. Sure. The — the cost arguments essentially quibble with the district court's apportionment and award of trial costs, which are determinations reviewed for abuse of discretion. Broadspring lost half of its case when the jury squarely rejected its Lanham Act claim, and the district court appropriately exercised its discretion in holding that to reflect that partial success, Broadspring was entitled to recover half of its taxable costs. Such an apportionment of costs has been approved by numerous courts, including this Court, including the Supreme Court. Those cases are set out in our brief at pages 40 to 41, and the district court was well within its discretion to make that allocation. Indeed, the district court would have been within its discretion to deny costs to Broadspring altogether because it did not prevail in full. And that is supported by this Court's decision, for example, in ARP Films v. Marvel Entertainment Group, set forth in our brief. It necessarily follows that the district court did not abuse its discretion in partially allocating costs if it could have denied them altogether. With regard to the transcript fees that were awarded in the case, again, the case law yes, two kinds, Your Honor, yes. So let me speak first to the daily trial transcripts. And the case law is clear that the district court was with well within its discretion to determine that those daily transcript costs were necessarily obtained for use in the case and were, therefore, recoverable. There are many cases in which district courts have awarded such costs, set forth in our brief at page 44. And with regard to the deposition transcripts that were used at trial, the district court noted that even if the depositions took place before trial, the transcripts were necessary for trial and, therefore, were taxable under Section 1922. And not 68d. Correct. Correct. Well, 19 — I think they work in tandem, but 1920 sets out the elements of costs that are taxable, one of which is transcripts necessarily obtained for use in the case. And the court made that determination based on several factors. Many of the transcripts were admitted by designation because deponents were outside of the district of — It's not linked, though, to the date of — Of the offer of judgment. I think the logic of the district court was those became taxable costs once they were necessarily used at trial, and in light of the offer of judgment, that's why they were awarded to us. The court also noted that as a prevailing party on at least half the case, that was another rationale by which such costs could be awarded. Rule 54. Correct, Your Honor. I've already addressed the expert point, and so I think that takes me to the end of the arguments that I wanted to put forth on costs. So unless Your Honor has other questions, I'll be seated. Thank you. We'll hear from Mr. Katz. Your Honor, on the Martin v. Zato case and the argument that — I'm sorry. What? On the Martin v. Zato case and on the argument that allowing fees as damages would eliminate the requirement of special damages, I would just — I think we addressed that in our briefs at length. I don't have much to add, so I'll just want to focus on a couple of the costs issues. There was a concession that the plain language of Rule 26 makes the denial of the expert costs an error. I think there also should have been a concession that the plain language of Rule 68 — There also should have been a concession. A plain language of Rule 68 — Should have conceded everything. The plain language of Rule 68 shifts costs that are incurred before the offer. There's simply no way to interpret the word incur as applying to — What your adversary is saying is that there was an alternative or what appears to be an alternative holding resting on Rule 54. I don't think it's possible to read that footnote as an alternative holding when all the district court said is they could have arguably been entitled to these costs as a prevailing party. That's not an actual determination. We can affirm on any basis in the record. And why is it that your adversary is not right that in the context of this case, the determination that it was a prevailing party was enough to assess costs or deny costs under Rule 54? So that ties in with our other issue, the allocation. If we're only half a prevailing party, then they're also only half a — Before you get to that issue. Right. What I'm saying is it applies to the notion that they could have gotten the deposition costs as a prevailing party. If we only half prevailed, then it has to be that they only — But the rationale, as I understood it, but I might be mistaken, was that these were entirely — these related entirely to the Lanham Act claim. No. The depositions were — they were depositions on everything. It was the entire deposition. So if you're awarding them under Rule 68, they can only get what they incurred before the offer. If they're being awarded under Rule 54, under the district court's logic, that we only prevailed on one out of two, which, by the way, wasn't correct. I suppose we might do this, but maybe this is something that ought to be sent and we can ask the district court what it meant to do and whether it means to award some or all of those fees on the basis of Rule 54. Sure. I think that's possible. So the language of the footnote is, a significant portion of the depositions addressed plaintiff's Lanham Act claim on which defendants are the prevailing party and would arguably be entitled to cost pursuant to Federal Rule of Civil Procedure 54D. And did you dispute at any point that a significant portion of the depositions addressed the plaintiff's Lanham Act claim? And if so, where? We didn't have a chance because this was something no one had raised until that footnote appeared in the decision. But I certainly would dispute it. They moved under Rule 54. Oh, no. If you look at their moving papers, it is crystal clear they're moving under Rule 68. And, in fact, they — Did they cite to Rule 54? No. In fact, they say, these are the costs we incurred after the offer. And then they say, from December 23, 2014 on, it was this for this cost, and so on. That was not something they put in their moving papers. And, in fact, I do dispute it. The district court didn't, I don't even think, had the transcripts before him when he dropped that footnote. But if he had, you can see that the transcripts relate a lot to the defamation claims and to the counterclaims that were dismissed on summary judgment. In fact, one of the depositions was — it was a third party subpoenaed by the defendants. And the whole point of subpoenaing him was because it had to do with their counterclaims. How much are we talking about? The toll on all of the costs is, I think — On this set of depositions, right? I think it's about $20-something thousand. What was the figure? I think it's about $20-something, but I'm not absolutely certain. Okay. Anything further? I'm sorry? Anything further? No. Thank you, Your Honor. I shouldn't do this without asking the presider first. I'm asking the presider. You were shaking your head vigorously as to the amount. Yes, Your Honor. And I know you're not allowed to talk anymore, but what — why? I'm going to repeat the second comment. Yeah. The amount is $35,014,000. We're talking about depositions and remainders. And if we want to find out that number specifically, we can ask you both. Okay. I'm sorry. I would suppose you get the last word. I'll accept counsel's representation. Thank you. Excellent. You concede. Great. Thank you very much.